UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA

VS.                                            CRIMINAL NO. 3:08cr140-DPJ-LRA

MARCUS GUICE

ORDER

This criminal matter is before the Court on Defendant Marcus Guice's Motion to Vacate [34] under 28 U.S.C. § 2255. Guice contends that his plea agreement is unenforceable and that his counsel was ineffective. Having considered the parties' submissions in light of the applicable law, the Court finds that Guice waived his right to file a § 2255 motion and that his motion is otherwise denied.

I.  Background

Guice was charged in a five count indictment that included four drug-related counts under 21 U.S.C. § 841(a)(1) and one count charging him with being a felon in the possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After several continuances, Guice appeared at an April 14, 2009, pretrial conference and was unsure whether to plead or go to trial. He opted for the plea two days later, and the Plea Agreement was signed and accepted at a plea hearing on April 21, 2009. Additional continuances followed, and the Court finally sentenced Guice on October 5, 2009.

Guice filed the present motion one year later on September 27, 2010. In it, he asserts that the Plea Agreement he signed was an unconscionable contract of adhesion and unenforceable for lack of consideration. He further asserts that his decision to waive the right to file a motion under § 2255 should be ignored because his counsel, the late Samuel H. Wilkins, was ineffective

in various ways that call into doubt the validity of the plea. The Government has responded in opposition to this motion, and Attorney Wilkins submitted an affidavit before his death. For the reasons that follow, the Court finds that Guice waived his right to file his motion and that he otherwise failed to provide a valid justification for vacating the judgement against him.

II. Analysis

　　A. Waiver

Pursuant to 28 U.S.C. § 2255(a), a prisoner in custody may move under limited circumstances to "vacate, set aside or correct the sentence." But that right can be knowingly and voluntarily waived. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Whether a waiver is valid turns on a two-step inquiry: "(1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005). "A defendant's waiver is knowing and voluntary if he indicates that he has read and understood the plea agreement, which contains an explicit, unambiguous waiver of appeal." *United States v. Pitts*, 443 F. App'x 25, 26 (5th Cir. 2011) (citation and quotations omitted).

　　　　1. Guice's Waivers

There can be no dispute that Guice professed to waive his right to appeal or file a motion under § 2255. First, the Plea Agreement itself contained the following language:

> Defendant, knowing and understanding all of the matters aforesaid . . . hereby expressly waives . . . a. the right to appeal the conviction and sentence imposed in this case, or the manner in which that sentence was imposed . . . on any ground whatsoever; b. the right to contest the conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255.
> . . .

2

Plea Agreement [19] ¶ 14. This same language was read by the prosecution during the plea hearing. And Guice acknowledged his understanding of these waivers under oath:

> THE COURT: All right. If you'll look on page 4 paragraph 14 and it continues over to page 5, these are waivers or things that you're giving up and you've waived or given up a number of rights that you might otherwise have by entering this agreement including the right to appeal the sentence or the conviction. Have you discussed all that with your attorney?
>
> THE DEFENDANT: (COUNSEL AND DEFENDANT CONFERRED)
>
> THE COURT: [H]ave you discussed that with your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand what you're waiving or giving up there?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. And you're knowingly and voluntarily agreeing to those terms as well as all the other terms of the agreement?
>
> THE DEFENDANT: Yes, sir.

Guilty Plea Tr. 20.

Guice likewise swore that he read and understood the full terms of the Plea Agreement. First, the agreement included the following declaration just above Guice's signature:

> **Defendant and his/her attorney of record declare that the terms of this plea agreement have been:**
>
> **1. READ BY OR TO HIM/HER;**
> **2. EXPLAINED TO HIM/HER BY HIS/HER ATTORNEY;**
> **3. UNDERSTOOD BY HIM/HER;**
> **4. VOLUNTARILY ACCEPTED BY HIM/HER; and**
> **5. AGREED TO AND ACCEPTED BY HIM/HER.**

Plea Agreement [19] at 6. Guice then confirmed these representations under oath:

> THE COURT: All right. Did you have an opportunity to read and discuss the plea agreement with your lawyer before you signed it?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you had a chance to ask him any questions that you might have about the plea agreement?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And was he able to answer your questions to your satisfaction so that you could tell me that you fully understand what's in that agreement?
>
> THE DEFENDANT: Yes, sir.

Guilty Plea Tr. 9. This testimony also belies Guice's contention that he lacked time to review the agreement, an argument also contradicted by the following testimony:

> THE COURT: All right. Mr. Guice are you satisfied with the amount of time that you've had to spend with your attorney.
>
> THE DEFENDANT: Yes, sir.

*Id.* at 8. In sum, "the waiver[s] appl[y] to the circumstances at hand, based on the plain language of the agreement," *Bond*, 414 F.3d at 544, and Guice informed the Court—under oath—that he read and fully understood those waivers.

        2.       Ineffective Assistance of Counsel

To overcome this thorough waiver of his right to file the instant motion, Guice claims that his attorney, Samuel H. Wilkins, was ineffective. Ineffective assistance of counsel is a well-recognized exception to the waiver rule. When counsel is shown to have been ineffective, the waiver will be ignored provided "the claimed assistance directly affected the validity of that waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). In this case,

Guice does not argue, nor could he, that alleged ineffectiveness affected the validity of the waiver. He claims instead that it affected the validity of the plea itself.

To establish that an attorney was ineffective, a defendant must prove that counsel's performance was deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the performance prong, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The prejudice prong in a plea context requires "reasonable probability that, but for counsel's errors, [Defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Lafler v. Cooper*, ---U.S.---, 132 S. Ct. 1376, 1384 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

### a. Performance

In this case, Guice contends that Wilkins' performance was constitutionally deficient in four primary ways: (1) informing Guice that if he proceeded to trial he would face a life sentence; (2) failing to inform him that "relevant conduct" would be considered in the guideline computations; (3) failing to inform him that he could have entered an "open plea" and received the same sentence; and (4) failing to "negotiate" with the United States or to understand and then explain contract law. The Court will examine each argument under the performance prong before examining them collectively under the prejudice prong.

### i. Life Sentence

Guice states at various times in his submissions that Wilkins "told [him] that if in fact [he] went to trial, [Guice] would be facing a life sentence for the charges pending." Pet.'s Aff.

[43] ¶5. Guice explains that he wanted to go to trial, but that he was "discouraged with being subject to a harsher penalty that was in fact not true . . . ." Mot. [34] at 7. He even suggests that a statutory sentence could not occur because a guideline sentence would be "required by law." *Id*. The problem with this argument is that Guice did face the risk of a life sentence—a fact the Court addressed during the plea hearing.

And such a sentence was certainly a realistic possibility. Guice carries an horrendous criminal history—14 prior convictions, 2 pending charges, and 8 other arrests for which the disposition was unknown at the time of sentencing. Moreover, overwhelming evidence supported the charges that he was engaged in large-scale drug distribution and was a felon in the possession of a firearm. First, when authorities arrived to serve a state search warrant on 222 Valley Ridge Drive in Jackson, Mississippi, they saw Guice sitting on the tailgate of a black GMC pickup truck. As they approached, Guice fled and threw an object later found to be 3.3 grams of cocaine base. Second, the keys to the GMC truck were found in Guice's pocket, and inside the truck the authorities found 183.8 grams of cocaine base, 1035 grams of cocaine hydrochloride, 518.8 grams of heroin, and $55,210 in currency. Third, officers found digital scales, vacuum sealers, and bags inside the residence along with bills and other documents bearing Guice's name. Fourth, a 44 caliber pistol was discovered in the residence along with photographs of Guice taken inside this same residence while tossing money in the air. Fifth, during his initial appearance before a state-court judge, Guice stated that he would "hold up for the drugs found." Sixth, a confidential informant alerted authorities to Guice's drug activities. Thus, Wilkins was not ineffective for reminding Guice that he faced a potential life sentence. In fact, it would have been ineffective to omit this legitimate possibility.

ii.  Relevant Conduct

Guice and Wilkins submitted conflicting affidavits whether they discussed the impact of relevant conduct on the guideline calculation. *Compare* Pet.'s Aff. ¶ 1 ("[M]y attorney, Mr. Wilkins never mentioned or told me about 'relevant conduct.'"), *with* Wilkins Aff. ¶ 8 ("Our discussions included my explanation to him of the term 'relevant conduct' in the context of sentencing and how it could affect the length of sentence he may receive."). It is obviously no longer possible to examine the late Mr. Wilkins, a seasoned and well-respected criminal-defense attorney. But other evidence supports his version of the events.

Foremost, the Plea Agreement expressly informed Guice that the drugs related to the dismissed counts (*i.e.*, the disputed relevant conduct) would be included in the guideline calculations. Paragraph 9 of the Plea Agreement memorialized the Government's promise to abstain from prosecuting Guice for criminal conduct other than the offenses to which he was pleading in Counts 1 and 5 "except that the matters referred to in the *remaining counts* of the indictment *may be used as relevant conduct in computing* the applicable Sentencing Guideline range." *Id.* ¶ 9 (emphasis added).

The Plea Agreement also referenced the drugs related to dismissed Counts 2–4 in the following stipulation:

> In consideration of the foregoing and pursuant to U.S.S.G. § 6B1.4, the parties hereby stipulate as follows: the amount and description of the drugs involved in this case, including relevant conduct, is approximately 187.1 grams of cocaine base, 417.1 grams of heroin, 1,035 grams of cocaine hydrochloride, and 2,894.4 grams of marijuana.

*Id.* ¶5. The inclusion of relevant conduct in the Plea Agreement is significant because Guice signed an acknowledgment that he read the Plea Agreement, had it explained by Wilkins, and

understood its terms. Plea Agreement [19] at 6. He then confirmed these same acknowledgments under oath during the plea hearing. In addition, the Court specifically referenced the stipulation during the plea hearing, informing Guice that such stipulations are not binding and that the Court would instead base the decision on the amount of drugs determined by the Court after review of the Pre-Sentence Investigative Report. Guice confirmed his understanding without question.

The Court also notes that Guice has given conflicting statements regarding what was discussed. For example, he states in his affidavit that "Wilkins *never mentioned* or told me about 'relevant conduct.'" Pet.'s Aff. ¶ 1 (emphasis added). But in his Motion, Guice states that until he met with Wilkins, "some fifteen minutes before he had to plea, that he never herd [sic] the word 'relevant conduct' moreover, did not understand its application in law." Mot. [34] at 11. Although he goes on to say that counsel never explained the term, *id.*, his statement conflicts with his declaration that it was "never mentioned."

Finally, it is worth noting that the relevant conduct was clearly referenced in the PSR, and Guice informed the Court that he read and understood that document, yet he said nothing at his sentencing hearing and made no effort to withdraw his plea. While not dispositive, this fact adds to the conclusion that Wilkins informed Guice about relevant conduct as he swore in his affidavit, reflecting no deficiency in assistance.[1]

---

[1]As discussed below, Guice fails to show prejudice even if Wilkins' performance was ineffective.

### iii. Failing to Explain Open Pleas

Guice next argues that Wilkins was ineffective for failing to explain "you'll get the same sentence if you plead to the court without the 'plea' being offered by the government, and preserve your right to appeal . . . ." Pl.'s Reply [41] at 4. Had he actually given that advice, Wilkins would have been badly mistaken. Although the guidelines are advisory only and courts are free to fashion the appropriate sentence, open pleas generally result in longer sentences for three reasons. First, they come without the Government's recommendation of a sentence in the lower ranges of the guideline calculation. Second, in fashioning an appropriate sentence, most courts consider the fact that the parties have an agreement, the defendant is fully cooperating, and that he is waiving certain rights by entering a plea agreement. This Court certainly considered those facts in arriving at the sentence it imposed and would have increased the sentence absent that cooperation. And third, absent a motion from the Government, the defendant loses one level for acceptance of responsibility.

On this final point, Guice argues that he was entitled to a three level reduction regardless. While that was the case before 2003, § 3E1.1(b) of the Sentencing Guidelines was amended in that year to require a motion from the Government before a defendant can receive the additional one-level reduction. In *United States v. Newson*, the Fifth Circuit applied the amended guideline provision and affirmed the denial of this extra reduction because the Government never moved for it. 515 F.3d 374, 378 (5th Cir. 2008). Significantly, the Government withheld that motion in *Newson* because the defendant would not agree to a plea that included a waiver of the right to appeal. *Id*. Applied in this case, the plea entitled Guice to a motion from the Government

reducing his guideline range of imprisonment from 188–235 months to 168–210 months. The Government so moved, and Guice received the reduction.

In sum, Guice is simply wrong that his sentence would have been the same had he not cooperated and signed the Plea Agreement—his lack of cooperation would have led the undersigned to impose a higher sentence. In any event, the question is whether Wilkins was ineffective at the bargaining stage in failing to tell Guice that the sentence would be the same under an open plea. On that point, no reasonable attorney would have given that advice when taking an open plea would eliminate a one-level reduction in the guideline calculation and forfeit the Government's recommendation of a sentence in the lower half of the applicable range. Wilkins' performance was not deficient in this regard.

            iv.  Failing to "Negotiate" or Explain Contract Law

Guice's two final assertions are related. Throughout his submissions, he claims that plea agreements in general—and his in particular—are contracts of adhesion. And because they lack consideration for the defendant, they are not enforceable. Guice then contends that Wilkins should have known all of this and explained it to Guice. In other words, he should have told Guice that the Plea Agreement was unenforceable. Neither contention has merit.

To begin with, there is little dispute that the Government had a superior bargaining position. Guice was caught red handed selling huge quantities of various illicit drugs, had an extensive criminal history, was selling drugs from a home where children were present, and he faced a statutory maximum life sentence. But these facts do not render the contact unenforceable. *United States v. Fernandez*, 54 F. App'x 793 (5th Cir. 2002) (rejecting argument that plea agreement was unconscionable contract of adhesion). Guice stated in open court that no

10

one forced him to accept the Plea Agreement, and he acknowledged that he understood his right to plead not guilty and to persist in that plea. If the Court were to accept Guice's argument, then plea agreements would become less enforceable in the Government's strongest cases.

And contrary to his assertions, Guice did receive the benefit of his bargain. Had it so chosen, the United States could have insisted on a trial and then recommended life in prison. And even without such a recommendation, the guideline range would have jumped by nearly 100 months because he would have lost the three-level reduction for acceptance of responsibility. Because he signed the Plea Agreement, Guice received a two-level reduction under § 3E1.1(a) and the Government fulfilled its promise to move for an additional one-level reduction under § 3E1.1(b). It also recommended a sentence in the lower 50% of the applicable guideline range—as promised in the Plea Agreement.

Returning then to Wilkins' performance, the contract was enforceable, so even if Wilkins did not explain the principles of contract law, the omission was not deficient. And contrary to Guice's assertion, Wilkins did secure consideration for the agreement as discussed in the previous paragraph. *See* Mot. [34] at 3–4. In sum, Wilkins' performance did not directly affect the "validity of the waiver." *White*, 307 F.3d at 343. Nor did it affect "the plea itself." *Id*. Thus, Guice waived his right to file a petition under § 2255.

      b.  Prejudice

Even if Guice could establish a constitutional deficiency in Wilkins' performance, his waiver would nevertheless be valid for lack of prejudice. To show prejudice, Guice must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Lafler*, 132 S. Ct. at 1384 (citing *Hill*, 474 at 59). Typically, that requires a

11

"reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Supreme Court recently addressed the prejudice test as it applies in the plea context, stating that a petitioner like Guice must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, ---U.S.---, 132 S. Ct. 1399, 1409 (2012). In this case, Guice argues at times that he would have elected for trial, but at others he contends that he would have taken an open plea. Because these assertions conflict, they militate against finding that he would have taken either option.

Regardless, Guice bases both assertions on the faulty predicate belief that he would have received the same sentence after trial or an open plea. As stated above, Guice faced a substantially longer sentence had he failed to sign the Plea Agreement. Looking more specifically at the two alternatives Guice claims he would have taken, the Court is first not convinced Guice would have ever taken the case to trial. According to Guice, he desired trial but "was discouraged with being subject to harsher penalty that was in fact not true . . . ." Mot. [34] at 7. But Wilkins' advice was true—and therefore not ineffective. And the Court believes Guice would be equally "discouraged" upon learning that his attorney was correct, especially in light of the overwhelming evidence against him.

Turning to the prospect of an open plea, the Court again finds no prejudice even if Wilkins failed to mention this option. According to Guice, he would have taken the open plea—assuming he did not truly desire trial—because the sentence would be no different and he

12

would retain his right to appeal. But Guice has not demonstrated that he would have opted for an open plea if it meant exposure to a more significant sentence—which it certainly did.

Even assuming Guice could show that he would have taken the open plea, he still fails to show any benefit because the sentence would have still considered relevant conduct and this Court would have increased the sentence for lack of an agreement with the Government. *See Frye*, ---U.S.---, 132 S. Ct. at 1409 (observing that prejudice can be shown if there is a "reasonable probability" that defendant would receive "a sentence of less prison time").

The only advantage to an open plea is the preservation of appellate rights, but Guice fails to demonstrate a valid issue he would have asserted but for the waiver. Numerous district courts have found no prejudice under similar circumstances. *See Sims v. United States*, No. 11–2267, 2012 WL 1207202, at *2 (D.N.J. Apr. 11, 2012) (finding no prejudice and holding that defendant "must show that had his counsel informed him of his option to enter an open plea, he would have done so and likely received a lower sentence"); *United States v. Quesada-Garcia*, No. CR S–02–0519 KJM DAD P, 2011 WL 5554618, at *11 (E.D. Cal. Nov. 15, 2011) (finding no prejudice where defendant rejected plea offers and noting that "an open plea would have meant even more prison time and deportation"); *United States v. Garcia*, Nos. 09–40031–02–SAC, 11–4005–SAC, 2011 WL 4688850, at *4 (D. Kan. Oct. 6, 2011) (finding no prejudice and holding that "defendant offers no showing of prejudice from having waived his right to a direct appeal. He does not identify or discuss any appellate issues that probably would have vacated his conviction or lowered his sentence"); *Rohrbaugh v. United States*, No. 2:06–CR–19, 2011 WL 1119544, at *13 (N.D.W. Va. Mar. 24, 2011) (finding no prejudice in failure to address open pleas).

13

Finally, Guice further fails to show prejudice because he was told in the agreement—and again at the hearing—that the Court was not bound by the agreement, the guidelines, or his attorney's estimates, and that he could face a maximum sentence of life in prison. Thus he voluntarily accepted the plea although facing a substantially longer sentence than the one he received. In sum, the Court finds no prejudice.

B.     The Merits

Even ignoring Guice's waiver, his motion lacks merit. First, for the reasons stated, the Court finds no ineffective assistance of counsel. Second, the Plea Agreement itself survives Guice's substantive argument that it is an unconscionable contract of adhesion lacking in consideration. *See Fernandez*, 54 F. App'x at 793. Guice had much to lose had he rejected the Plea Agreement or opted for an open plea, and he received the benefit of his bargain.

C.     Hearing

Section 2255(b) provides that an evidentiary hearing should be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Generally, the movant must produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citations omitted); *see also United States v. Soliz*, 359 F. App'x 466, 470–71 (5th Cir. 2009) (finding that an evidentiary hearing was not required where defendant claimed his attorney promised a lesser sentence). Guice offers no such evidence.

Regardless, the record conclusively shows that Guice's motion should be denied without a hearing. As an initial point, "'contested fact issues [in a § 2255 case] ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record.'"

14

*United States v. Havens*, 450 F. App'x 363, 365 (5th Cir. 2011) (quoting *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981)). Here, there is only one disputed fact—the extent to which Wilkins explained relevant conduct. *See* Pet.'s Resp. [41] at 2–3 (stating that petitioner will not "waste a lot of time addressing the affidavit submitted by Counsel Wilkins" and then arguing that Plea Agreement lacked consideration).[2]

Unfortunately, Mr. Wilkins is now deceased, and a hearing will not assist in developing his position. Wilkins' affidavit is, however, supported by other record evidence. *See Havens*, 450 F. App'x at 365. As stated, the Plea Agreement itself expressly states that relevant conduct would be included in the guideline calculation. *See Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985) (holding that "official records" like a waiver form are "entitled to a presumption of regularity and are accorded great evidentiary weight") (cited in *Soliz*, 359 F. App'x at 470 (holding that plea agreements receive this presumption)). And Guice repeatedly affirmed that he went through the entire document with Wilkins and understood what it said. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Finally, even if Guice could show that Wilkins' performance was ineffective with respect to the relevant-conduct argument, no evidentiary hearing is necessary because the record

---

[2]Guice's factual assertions are found in his Motion [34] and two replies [41, 42], none of which are verified. He does submit an affidavit [43], but it is minimal and only addresses a few of the many statements found in his other submissions. For the sake of argument, the Court will assume Guice would have presented the factual assertions in an admissible format.

conclusively shows Guice failed to meet the prejudice prong of the *Strickland* standard as to that argument. And Guice's remaining arguments—like the suggestion that Wilkins was ineffective for advising Guice that he faced a life sentence—do not turn on disputed facts or credibility issues. As to each, the record conclusively shows no basis for relief. No hearing is needed. *See Soliz*, 359 F. App'x at 471 (affirming denial of § 2255 motion without hearing where defendant challenged voluntariness of plea agreement).

III. Conclusion

The Court has considered all of Guice's arguments and prayers for relief. Those not addressed herein would not have altered the ruling. The Court finds that the Motion to Vacate [34] should be denied.

**SO ORDERED AND ADJUDGED** this the 11th day of June, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE